IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LORI A. DAVIS, )
)
    Plaintiff, )
)
 -vs- ) Civil Action No. 17-462
)
NANCY A. BERRYHILL,[1] )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Background

Plaintiff Lori A. Davis ("Davis") brings this action for review of the ALJ's decision denying her claim for Disabled Adult Child's Benefits and for supplemental security income ("SSI") under the Social Security Act. She alleges a disability beginning on November 1, 1987 (R. 21) Following a hearing before an ALJ, during which time both Davis and a vocational expert ("VE") testified, the ALJ denied her claim. Davis appealed. Pending are Cross Motions for Summary Judgment. *See* ECF docket nos. [9] and [11].

### Legal Analysis

1. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

1

37, 39 (3d Cir. 1989). Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate. *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). The

2

Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P, appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id. A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

    2. <u>The ALJ's Analysis</u>

At step one, the ALJ found that Davis had not engaged in substantial gainful activity since December 30, 1987, the date that she attained age 22. (R. 24) At step two, the ALJ concluded that Davis has the following severe impairments: degenerative disc disease, borderline intellectual functioning, affective disorders, an anxiety disorder,

and alcohol dependence, in early remission. (R. 24) Although the ALJ found reference to other impairments in the record, she determined that they were non-severe. (R. 24)

At step three, the ALJ concluded that Davis does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1. The ALJ considered Davis' impairments under Listings 1.04 and 12.05. (R. 25-28)

Prior to engaging in step four, the ALJ assessed Davis' residual functional capacity ("RFC").[2] She found Davis able to perform a range of light work with certain restrictions. (R. 29) At step four, the ALJ determined that Davis had no past relevant work. (R. 31)

Finally, at step five, the ALJ found that, considering Davis' age, education, work experience, and RFC, there are significant numbers of jobs in the national economy that she can perform. (R. 31-33) For instance, the ALJ explained that Davis will be able to perform the requirements of occupations such as a cleaner, a marker, and a mail sorter. (R. 32)

3. Step Three – Intellectual Disability as Defined in Listing 12.05

As stated above, at the third step of the sequential analysis, the ALJ is tasked with determining whether the claimant's impairments meet or equal the criteria listed in 20 C.F.R. Pt. 404, Subpt. P, appx. 1. *See* 20 C.F.R. § 416.920(a)(4)(iii). "If the impairment is equivalent to a listed impairment, then [the claimant] is *per se* disabled

---

[2] "RFC" refers to the most a claimant can still do despite his / her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his / her limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Additionally, a person's RFC is an administrative finding reserved for the ALJ, not a medical opinion to be rendered by a doctor. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1546(c), 416.946(c).

4

and no further analysis is necessary." *Burnett v. Comm'r. of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). The Listing at issue here is 12.05. Listing 12.05 states, in relevant part:

> 12.05 Intellectual Disability: Intellectual disability refers to significantly sub average general intellectual function with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> …
> B. A valid verbal, performance, or full-scale IQ of 59 or less;
> OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.
> …

20 C.F.R. § 404, Subpt. P, App. 1, 12.05 (2015).[3] Davis insists that the record evidence demonstrates that she had a full-scale IQ of 59 or less as per 12.05B and / or a full scale IQ score of 60 through 70 plus an additional significant work-related impairment.

I need not resolve this issue, however, because regardless of whether Davis is able to demonstrate that she can satisfy the requirements of 12.05(B) or (C), she must also demonstrate that she satisfies the "capsule definition" of 12.05. This burden falls squarely on Davis. *See Kimble v. Comm'r. of Soc. Sec.*, Civ. No. 16-4448, *9 (D.N.J. Sept. 25, 2017) (stating that the "Third Circuit has held that the claimant bears the burden of establishing the existence of an intellectual disability during the developmental period."), *citing, Cortes v. Comm'r. of Soc. Sec.*, 255 Fed. Appx. 646,

---
[3] On September 26, 2016, the SSA issued Revised Medical Criteria for Evaluating Mental Disorders, Final Rule, which amended listing 12.05. 81 Fed. Reg. 66138. *See* 2016 WL 5341732 (2016). The amendment does not impact this case. The Final Rule provides that "[w]e expect that Federal Courts will review our final decision using the rules that were in effect at the time we issued the decisions." *Id.*, at n. 1. The rule set forth above was in effect at the time the ALJ issued her decision.

652 (3d Cir. 2007). Thus, as the Third Circuit court noted in *Gist v. Barnhart*, 67 Fed. Appx. 78, 81 (3d Cir. 2003), "[a]s is true in regard to any 12.05 listing, before demonstrating the specific requirements of Listing 12.05C, a claimant must show proof of a 'deficit in adaptive functioning; with initial onset prior to age 22." *See also, Lansdowne v. Astrue*, Civ. No. 11-487, 2012 WL 4069363, at *4 n. 4 (W.D. Pa. Sept. 17, 2012) (stating that "[a]lthough not specifically mentioning the need to establish 'deficits in adaptive functioning,' *Markle*[4] did expressly hold that a claimant must show 'mental retardation' manifested before age 22, and Listing 12.05 explicitly states that 'mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning.' Accordingly, … *Markle* is wholly consistent with the subsequent decisions in *Gist* … as well as with the clear and unequivocal pronouncement made in the explanatory notes to the mental disorder listings in 12.00A."); *Demacio v. Comm'r. of Soc. Sec.*, Civ. No. 12-1313, 2014 WL 1278086, at * 12 (W.D. Pa. March 27, 2014 (stating that "the Court finds that it is now well settled in this Circuit that the third prong of the *Markle* test requires a claimant to show 'deficits in adaptive functioning' with an onset prior to the age of 22 in addition to an IQ score with one of the required ranges of severity."); and *Cruz v. Colvin*, Civ. No. 15-1639, 2016 WL 1091347, at * 10 (D.N.J. March 21, 2016) (stating that "before turning to the specific requirements of Listing 12.05C … the plaintiff must demonstrate deficits in adaptive functioning prior to age 22.") (internal quotation marks omitted).

After careful review, I find that substantial record evidence supports the ALJ's finding that Davis did not have deficits in adaptive functioning prior to age 22. The ALJ

---

[4] *Markle v. Barnhart*, 324 F.3d 182 (3d Cir. 2003)

consulted the DSM-IV,[5] noting that "adaptive functioning refers to how effectively an individual copes with common life demands, and how well she meets the standards of personal independence expected of someone in her particular age group, sociocultural background, and community setting." (R. 26) Utilizing this standard, the ALJ found that:

> In this case, the claimant lives alone, takes care of her place, cooks, does laundry, makes coffee for a neighbor each morning, takes public transportation, and goes out with friends. She helps care for her elderly mother and has reported "helping everybody" (Exhibit 6F, page 38). She testified that she plays shuffleboard and pool, goes shopping, goes to church every week, and goes to motorcycle and car nights once a week with her boyfriend (who owns a motorcycle). These activities are not consistent with a disabling intellectual disability. Even though she was in special education classes while in school, she was in the upper range of functioning for special education.

(R. 26) Clearly the ALJ's reference to Davis' placement in the upper range of functioning of special education classes in high school relates to her "adaptive functioning" prior to age 22. Additionally, the ALJ noted that, at age 15, Davis' full scale IQ as measured on the Stanfield Benet scale was 72. (R. 25) As such, I reject Davis' contention that the ALJ solely considered how she functioned post-age 22. Davis disagrees, pointing to the psychoeducational examiner's notation that Davis "appears lacking in higher level social judgment and social maturity," in support of a finding that she displayed deficits in adaptive functioning prior to age 22. Yet that examiner, whom the ALJ references, also noted that:

> Lori's general intellectual and academic skills as well as her adaptive behavior are considered to be in the upper limit for students in the adjusted curriculum program. Hence, she should have enrichment in challenge to higher level than is

---

[5] As recognized in *Logan v. Astrue*, 2008 WL 4279820 (W.D. Pa. 2008), the Social Security regulations do not define "deficits of adaptive functioning" nor do they set forth the standards against which a claimant's alleged deficits must be measured. *See Logan*, 2008 WL 4279820, at * 8. Nevertheless, "in order to properly assess a claimant's alleged mental retardation to determine if deficits in adaptive functioning exist, according to the Social Security Administration, an ALJ should consult either the APA's Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), the standard set forth by the AAMR, or the criteria of the other major mental health organizations. *Id*., at * 8 (footnote omitted). Davis does not object to the ALJ's use of the DMS-IV.

7

> typical of students in this program and should be able to be involved in vocational programs at the upper limits in the Work Study Program. Maximal mainstreaming for adjusted curriculum students, is also recommended.

(R. 300)

Further, the ALJ's consideration of Davis' ability to live independently, perform household chores, prepare meals, and engage in meaningful relationships at the time of the hearing is consistent with how courts in this Circuit assess deficits in adaptive functioning. See [Kimble v. Comm'r. of Soc. Sec., 2017 WL 4268035, *10 (D. N.J. Sept. 25, 2017)](#) (finding that an ALJ did not err in considering a claimant's gainful employment history, graduation from high school, ability to assist in light household chores, make simple meals, maintain friendships and engage in various social activities with friends and family in assessing deficits of adaptive functioning.); [Vasquez v. Colvin, Civ. No. 12-6169, 2014 WL 1301364, * 8 (E.D. Pa. March 21, 2014)](#) (affirming an ALJ's finding of no deficits in adaptive functioning where the claimant "takes care of his personal needs and he independently cleans, prepares meals, does household and yard work, and is the sole caregiver for his 5 month old daughter for 8 hours daily, five days a week."); and [Harper v. Colvin, Civ. No. 13-446, 2014 WL 1278094, * 8 (W.D. Pa. March 27, 2014)](#) (affirming a finding of no deficits in adaptive functioning where the ALJ explained that the claimant had completed high school, trained as a CAN, worked in jobs requiring some skill, cared for herself, raised children, drives, shops for groceries, cleans her house, and manages her own finances).

Consequently, I find that substantial evidence supports the ALJ's assessment of deficits in adaptive functioning at step three of the analysis. There is no basis for remand.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LORI A. DAVIS )
    Plaintiff, )
)
-vs- ) Civil Action No. 17-462
)
NANCY A. BERRYHILL,[6] )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this 6th day of March, 2018, it is hereby ORDERED that the decision of the ALJ is affirmed. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 9) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 11) is GRANTED.

                                                                  BY THE COURT:

                                                                  /s/ Donetta W. Ambrose
                                                                  Donetta W. Ambrose
                                                                  United States Senior District Judge

---

[6] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.